## Isham Russell, Administrator, Appellee, v. Cleveland, Cin= cinnati, Chicago & St. Louis Railway Company et al., Appellants.

NEGLIGENCE—*what prerequisite to recovery.* In order to recover for the negligent conduct of another, a person injured or killed must himself at the time of the accident have been in the exercise of ordinary care for his own safety.

Action in case for death caused by alleged wrongful act. Appeal from the Circuit Court of Saline county; the HON. A. W. LEWIS, Judge, presiding. Heard in this court at the October term, 1911. Reversed. Opinion filed March 21, 1912.

W. F. SCOTT, for appellants; P. J. KOLB, of counsel.

J. B. LEWIS and SIGEL CAPEL, for appellee.

MR. JUSTICE MCBRIDE delivered the opinion of the court.

Appellee recovered a judgment against the appellants in the Circuit Court of Saline county for nine hundred dollars, to reverse which judgment this appeal is prosecuted. Carrier Mills is a town of about two thousand inhabitants, situated on the C. C. C. & St. L. Railroad in Saline county. On the morning of March 9, 1909, at about four o'clock, the station house of said railroad at said town was burned, and when

the building burned the telegraph wires dropped down on the ground or platform and remained there until about seven o'clock A. M., at which time the section foreman and others tied up said wires. The depot platform was about one hundred feet long and was located on the south side of the railroad which extended practically east and west. While the wires lay upon the platform one of them from some apparently unknown cause became charged with a heavy voltage of electricity which caused sparks to emit from the end of the wire and to burn the coal and such things as might come in contact with it and to cause severe shocks to persons who might happen to touch it. There was a train due to arrive upon defendant's road at about eight o'clock in the morning. At about 6:30 or 7 o'clock in the morning the section foreman and others in charge at the depot tied up said wires, including the one so heavily charged with electricity, at a distance from four to seven feet over the platform and at or near the south end of the platform. The depot building was entirely burned up, and from the time of the fire until the deceased was killed quite a number of people were gathered upon this platform. After the wires had been tied up and before the arrival of any train the deceased and his father came to the depot and entered upon the depot platform; the father claimed that the deceased was expecting to take the train that was to arrive at about eight o'clock for Harrisburg. While the deceased was there his friend Milo Motsinger went over to where he was and they got to talking about the wire and the deceased said he believed he would put the ear of Motsinger to it and that they would both get a shock, and then took hold of Motsinger and while they were in the scuffle the deceased reached up his hand and took hold of the live wire and was instantly killed. The right of action is based upon the original count of common law negligence, and the other counts charging that the defend-

ants were wilfully, wantonly and knowingly negligent.

The first, or original count of the declaration charges that the defendants negligently permitted said wire, so charged with electricity, to remain at and above the said platform at the distance of, to-wit, four feet, and that by reason thereof persons lawfully upon said platform were in danger of being injured thereby, and that the deceased while in the exercise of due care for his own safety was killed through the negligence of defendant permitting said live wire to be suspended as aforesaid.

On the first trial of this cause the Water and Light Company was joined as a party defendant but the court directed the jury to find it not guilty, and the succeeding trials proceeded against the other two defendants. Thereafter the plaintiff filed four additional counts, denominated, additional second, third, fourth and fifth, and in these counts and each of them the defendants are charged with having wantonly, wilfully and knowingly allowed the said wires, so charged with the currents of electricity, to be and remain above the said platform, and that said wire was so near to said platform as to be dangerous to persons then and there on said platform, and while the deceased, Laurence Russell, was lawfully upon said platform he came in contact with said live wire and was thereby killed. To each of these counts of the declaration the defendants filed a plea of not guilty, and also a plea of the statute of limitations. The plaintiff filed a demurrer to the plea of the statute of limitations and the court sustained the demurrer as to the plea of the statute of limitations to the second, third and fourth additional counts, and overruled the demurrer, as to the plea of the statute of limitations, to the fifth additional count. No replication was filed to this plea to the fifth count but the cause proceeded to trial upon the original declaration, the second, third and fourth additional counts and the plea of general issue thereto.

The appellants assign as error the ruling of the court in sustaining the demurrer to the several statutes of limitations, the joint liability of the defendants, several rulings of the court upon the admissibility of testimony during the trial of the case, the refusal of the court to direct a verdict and the refusal of the court to set aside the verdict and grant a new trial herein.

After carefully examining the evidence in this case we deem it necessary to consider only one proposition and that is, as to whether or not under the evidence introduced in this case the defendants are liable for damages in causing the death of Laurence Russell. Under the original count of the declaration it was necessary for the appellee to prove that the defendants were guilty of negligence, and that the appellee's intestate was in the exercise of due care and caution for his own safety. The evidence discloses, in this case, that before the appellee's intestate and his father came on to the platform that the wires, including the one so heavily charged by electricity, had been by the agents of the defendants picked up from off of the platform and tied up at or near the south end of the platform, and at a height of from four to seven feet above the platform, most of the witnesses putting it at five and a half feet, and while the wire was in this position the deceased came upon the platform and after reaching the platform his friend, Milo Motsinger, says, "When I went over there we got to talking about the wire and he said he believed he would put my ear to it and we would both get a shock; he took hold of me and we began to scuffle. When he took hold of the wire it knocked me loose from him and knocked me about fifteen or twenty feet. When he told me that he was going to put my ear against it and give us both a shock I told him not to do it, it might hurt us." "I told Russell we might get hurt and he

said it was only an ordinary telegraph wire and would not hurt any one.''

William Capel told them when they were scuffling that they had better quit it as one of them might get against the wire and get killed, and he says he saw Russell grab at the wire.

James Lewis says he saw one of Russell's hands go up three or four times grabbing at the wire before he got hold of it.

S. T. Barnes says that he spoke to Russell and told him if he took hold of that wire it would kill him; that he did this while they were scuffling.

Dan Altmier says that he saw Russell reaching up with his right hand four or five times before he got hold of it and as soon as he got hold of it, it killed him.

There was an effort made by appellee to rebut some of this testimony by showing that other people who stood around there did not hear the statements testified about but we do not think this sufficient to rebut the statements of witnesses who claim to have heard and made the declarations themselves. There was at least three witnesses who testified that the deceased was admonished not to take hold of the wire and several who testified that he made several efforts before getting hold of it. We think this evidence together with other evidence in the record conclusively shows that the deceased was not in the exercise of due care and caution for his own safety, and appellee is barred from a recovery under the first count of this declaration. Counsel for appellee says: ''The preponderance of the evidence was clearly sufficient to convince the jury that the death of Laurence Russell was occasioned by and resulted from the willful, wanton and gross negligence of both defendants.''

In the case of I. C. R. R. Co. v. Leiner, 202 Ill. 624, willful or wanton negligence is defined as, ''An entire absence of care for the life, the person or the

property of others, such as exhibits a conscious indifference to consequences, makes a case of constructive or legal willfulness, such as charges the person whose duty it was to exercise care, with the consequences of a willful injury;'' and this was approved in the case of Toledo, St. Louis & Western R. R. Co. v. Baker, 138 Ill. App. 83.

It is also said in the case of East St. Louis Connecting Ry. Co. v. Meeker, 119 Ill. App. 27: "It is contended however, that the action of Dwire in giving the signal was so grossly negligent as to import willfulness and wantonness on his part. In I. C. R. R. Co. v. Leiner, 202 Ill. 624, our Supreme Court indorsed an instruction stating, 'What is meant by willful and wanton misconduct is such conduct as amounts to an intentional wrong or of such a reckless character, as shows that the person or persons guilty of such misconduct, were at the time acting in such a manner as shows that they had an utter disregard for the safety and lives of other persons.' '' Indeed many authorities might be quoted to the same effect. If the defendants were acting in utter disregard for the safety and lives of other persons we are unable to understand and appreciate why it was that they caused the wires, including the live wire, to be suspended sufficiently high above the platform that no one need come in contact with it, unless they voluntarily did so. Counsel for appellee argues that because the wires were permitted to lie upon the platform until 6:30 or seven o'clock, and while they were there sputtering and emitting electric sparks, and the people who were then there were unprotected and unguarded, and that Mr. Suttlemore, the agent of the defendant, was present and saw this and laughed because some of the bystanders received a shock from this wire, that this was sufficient to show in Suttlemore, the agent, a wanton and willful negligence. This, however, all occurred sometime before the deceased came upon the platform.

At the time deceased came upon the platform the wires had been taken up and suspended at a remote end of the platform and at a height sufficient to prevent injuring all persons who did not voluntarily come in contact with the wire. Even if it be conceded that this willful and wanton purpose existed in the mind of Suttlemore, or those in control at the time the wire lay upon the platform, his mind was thereafter changed, and he caused the dangerous element to be removed from the platform; the appellee could not take advantage of any purpose that might have existed in the mind of the agent before the deceased came upon the platform, if in the meantime his purposes were changed. It appears clearly from this evidence that the deceased was apprised of the fact that one of these wires was charged with electricity, at least sufficient to shock a person, and out of mere sport he thought to subject his friend, with whom he scuffled, to a shock by this wire and while he perhaps did not appreciate that to touch it would cause instant death, yet he did know that the voltage was of such a character as to produce a shock, and notwithstanding the warning of those standing by he caught the wire and was killed, and as we see it, he himself brought on his death.

There is nothing in this record that shows any purpose or disposition upon the part of the servants of the defendants showing such a gross want of care and regard for the rights of others as to justify the presumption of willfulness or wantonness, or a willingness to inflict an injury upon any person.

We think the verdict of this jury was manifestly against the weight of the evidence and the judgment is reversed.

*Judgment reversed.*

We find as ultimate facts that deceased was guilty of negligence which contributed to cause his death and that appellant was not guilty of willfully or recklessly causing his death.